# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

CHERIE BENNETT, :

                Plaintiff,

  -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,
                Defendant. :

Case No. 3:08-cv-339

District Judge Walter Herbert Rice
Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1381(c)(3) as it incorporates §405(g), for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v.*

*Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

To qualify for supplemental security benefits (SSI), a claimant must file an

application and be an "eligible individual" as defined in the Social Security Act. 42 U.S.C. §1381a. With respect to the present case, eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. §1382(a). To establish disability, a claimant must show that the claimant is suffering from a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §1382c(a)(A). A claimant must also show that the impairment precludes performance of the claimant's former job or any other substantial gainful work which exists in the national economy in significant numbers. 42 U.S.C. §1382c(a)(3)(B). Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application. *See,* 20 C.F.R. §416.335.

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520 . First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 (1990). If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the

Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed applications for SSD and SSI on August 4, 2004, alleging disability from January 1, 2004, due to blockage in brain, developmental handicapped student, curvature of the spine, manic depression, panic disorder, and phobia. *See* Tr. 58-60, 489-91; 70, 86. Plaintiff's applications were denied initially and on reconsideration. *See* Tr. 39-48, 492-99. A hearing was held before Administrative Law Judge Melvin A. Padilla, (Tr. 500-23), who determined that Plaintiff was not disabled. (Tr. 15-31). The Appeals Council denied Plaintiff's request for review, (Tr. 7-9), and Judge Padilla's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Padilla found that Plaintiff has severe impairments of history of learning disorder with possible borderline intellectual functioning, mood disorder, and anxiety disorder, but that she does not have an impairment or combination of impairments that meets or equals the Listings. (Tr. 18, ¶ 3,; Tr. 22, ¶ 4). Judge Padilla also found that Plaintiff has the residual functional capacity to perform work at all exertional levels involving unskilled, simple, repetitive tasks which do not involve reading as part of the job duties and which are low stress with no fast-paced work or production quotas. (Tr. 23, ¶ 5). Judge Padilla then used section 204.00 of the Grid as a framework for deciding, coupled with a vocational expert's testimony, and found there is a significant number of jobs in the economy that Plaintiff is capable of performing. (Tr. 30, ¶ 10). Judge Padilla concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. (Tr. 31, ¶ 11).

In her Statement of Errors, Plaintiff does not challenge the Commissioner's findings with respect to her alleged exertional impairments. See, Doc. 9. Accordingly, the Court will

4

focus its review of the medical evidence on Plaintiff's alleged mental impairments.

Plaintiff underwent a psychoeducational evaluation in April, 1991, when she was ten years old and in the fourth grade. (Tr. 133-38). At that time the evaluator noted that testing with the Wechsler Intelligence Scale for Children – Revised (WISC-R) revealed that Plaintiff achieved a verbal IQ of 72, a performance IQ of 61, and a full scale IQ of 64. *Id.* The evaluator also noted that Plaintiff's performance placed her in the developmentally handicapped range. *Id.* The evaluator reported that Plaintiff's scores might be a slight underestimate of her true ability due to poor visual perception problems. *Id.* The evaluator reported further that test results revealed that Plaintiff's basic reading was at the 3.8 grade level, her reading comprehension was at the 3.0 grade level, her math calculation was at the 2.7 grade level, her math reasoning was at the 2.7 grade level, and that her written language skills were at the 3.3 grade level. *Id.* The evaluator also reported that with respect to social skills, Plaintiff seemed to interact better with younger children and had a difficult time participating in group activities during unstructured settings such as lunch and recess. *Id.* The evaluator noted that Plaintiff enjoyed praise, seemed happy most of the time, that she accepted criticism, and that she had a fairly good self-concept. *Id.*

When Plaintiff was 14 years old, she was re-evaluated under the developmentally handicapped school program. (Tr. 121-32). At that time, the school psychologist reported that Plaintiff had a verbal IQ of 60, a performance IQ of 55, and full scale IQ of 54. *Id.* The school psychologist also reported that the corresponding classification for Plaintiff's full scale IQ score was in the mentally deficient range of intellectual ability and, overall, based on these results, Plaintiff could be expected to perform at a level that was significantly lower than the performances of same-aged peers. *Id.* The psychologist noted that Plaintiff's basic reading was at grade 5.4 level, her

reading comprehension was at grade 4.6 level, her math calculation was at grade 3.5 level, her math reasoning was at grade 3.3 level, and that her written expression was at grade 4.6 level. *Id.*

Plaintiff continued to receive special education services through high school. (Tr. 105-120). On October 1, 1997, when Plaintiff was 17 years old, the results of the Wechsler Adult Intelligence Scale-Revised (WAIS-R) revealed that she had verbal IQ of 87, a performance IQ of 68, and a full scale IQ of 71. (Tr. 110). Test results also revealed that Plaintiff's basic reading skills were at the 6.2 grade level, her reading comprehension skills were at the 4.5 grade level, her math calculation abilities were at the 4.0 grade level, her math reasoning was at the 4.9 grade level, and that her written expression skills were at the 3.7 grade level. *Id.*

The record contains a copy of treating physician Dr. Niktash's office notes dated March 11, 2002, through February 15, 2005, and which reflect that he treated Plaintiff for various medical conditions including insomnia, left ear wax impaction, chest wall pain, sinusitis, urinary tract infection, upper respiratory infection, abdominal pain, low back pain, and depression. (Tr. 311-66). In September, 2004, Dr. Niktash diagnosed Plaintiff with bipolar disorder. *Id.* Dr. Niktash reported in January, 2005, that Plaintiff was requesting Vicodin, made no attempts to find a job, and was engaging in narcotic-seeking behavior. *Id.*

Examining psychologist Dr. Metts reported on October 29, 2004, that Plaintiff graduated from high school, was in DH classes, had a blunt affect with a depressed quality, and that her tone and prevailing mood were of moderate depression. (Tr. 295-300). Dr. Metts also reported that Plaintiff was anxious around strangers, had panic attacks at times, was alert and oriented, was not confused, her immediate auditory skills were impaired, her ability to think abstractly was impaired, and that her judgment and comprehension abilities were impaired. *Id.* Dr. Metts noted

6

that Plaintiff had a verbal IQ of 67, a performance IQ of 67, and a full scale IQ of 64, her general and immediate memory were in the extremely low range, her working memory was in the borderline range, and that her reading skills were at a 4th grade level. *Id.* Dr. Metts identified Plaintiff's diagnoses as bipolar disorder, NOS, panic disorder without agoraphobia, and borderline intellectual functioning. *Id.* Dr. Metts assigned Plaintiff a GAF of 52. *Id.* Dr. Metts opined that Plaintiff had a moderate impairment in her ability to relate to others, sustain attention/concentration, and withstand the stress and pressure of daily work activity and that her ability to understand, remember, and follow two-step directions would be mildly impaired by her low verbal intelligence, but she was able to follow simple, one-step directions without supervision. *Id.*

Plaintiff sought treatment at Mental Health Services for Clark and Madison County on October 7, 2004, at which time a mental health counselor reported that Plaintiff had been referred by her family due to alleged mood swings, that she complained of some irritability and difficulty concentrating and focusing, had a lifetime history of learning disabilities, was in developmentally handicapped classes, was a poor historian, and that she missed the appointment to complete the clinical assessment. (Tr. 304-06). The counselor also reported that Plaintiff was calm, oriented, had an intact memory, and was mostly monosyllabic throughout the interview. *Id*. The counselor noted that Plaintiff's mood and affect were depressed, that cognitive issues were tantamount throughout the assessment, she had a poor command of the language, and that she some difficulty in abstract reasoning skills. *Id.* The counselor identified Plaintiff's diagnoses as depressive disorder NOS and a learning disorder NOS and he assigned Plaintiff a GAF of 50. *Id.*

Dr. Smith, a psychiatrist at Mental Health Services, performed an initial evaluation on December 14, 2004, at which time he noted that Plaintiff reported that she was apprehensive

when around others, had increased anxiety attacks when she around others, and that was not able to work because she gets overwhelmed and passes out. (Tr. 302-03). Dr. Smith identified Plaintiff's diagnoses as a panic disorder and depression and he prescribed medications. *Id.*

Plaintiff received mental health treatment at Mental Health Services during the period October, 2004, through at least August, 2007. (Tr. 309-66; 390-401; 421-23; 485-87). In January, 2005, Dr. Smith and Plaintiff's counselor reported that Plaintiff was disabled and unable to work because of major depression and panic disorder. *Id.* Plaintiff continued to receive treatment from Dr. Smith every few months for medication adjustments. *Id.* Plaintiff attended counseling monthly through April, 2005, and then every two months. On June 21, 2005, Plaintiff's counselor reported that Plaintiff was still unable to work due to major depression, recurrent and severe, and panic disorder. *Id.*

In June 2006, Dr. Smith reported that Plaintiff was extremely limited in her ability to perform most mental work-related activities including maintaining attention and concentration for extended periods, responding appropriately to changes, and interacting with coworkers. (Tr. 419-20). Dr. Smith opined that Plaintiff was markedly limited in several areas including interacting appropriately with the public and understanding/remembering short or simple instructions. *Id.*

In March 2007, Dr. Smith and Plaintiff's counselor reported that Plaintiff was not able to withstand the stress and pressure of regular work activity or sustain attention and concentration, that she would not be reliable, behave in an emotionally stable manner, and that she would not interact appropriately with others. (Tr. 424-32).

In April, 2007, Plaintiff reported that she had delivered her baby six weeks earlier and she denied any post-partum depression. (Tr. 442). Plaintiff's counselor noted in May, 2007,

8

that Plaintiff was still not on any medications and still improved in terms of her mood and that he (the counselor) and Plaintiff had mutually agreed to terminate her treatment. (Tr. 441). On his discharge summary, Dr. Smith noted Plaintiff had a long-standing history of a learning disorder, had difficulty comprehending things, was unable to read very much at all, and that consequently she was not able to work because work stress seems to aggravate her symptoms as well as her learning disorder. (Tr. 485-87).

Examining psychologist Dr. Schulz noted on May 9, 2007, that Plaintiff reported being depressed, having crying spells, and difficulty sleeping, and that the biggest reason she could not work was anxiety attacks and depression. (Tr. 406-16). Dr. Schulz also noted that Plaintiff graduated from high school, attended special education classes from the third grade until she graduated, and that she had previously worked as a customer service representative, cashier, and hostess. *Id.* Dr. Schulz also noted that Plaintiff's speech was normal, she did not present with any obsessive thoughts, her affect was appropriate and congruent, her motor activity was normal, and her mood was euthymic. *Id.* Dr. Schulz reported that Plaintiff was alert and oriented, appeared to have sufficient judgment to make life decisions and conduct her own living arrangements, and that her verbal IQ was 66, her performance IQ was 69, her full scale IQ was 64, and that overall, her performance was classified in the extremely low range. *Id.* Dr. Schulz identified Plaintiff's diagnoses as dysthymia, anxiety disorder, and borderline intellectual functioning and he assigned Plaintiff a GAF of 60. *Id.* Dr. Schulz opined that although Plaintiff scored in the subaverage range on the WAIS-III, her overall language usage/recognition and adaptive behavioral functioning did not support a diagnosis of mental retardation, that she functioned within the borderline range, and that the day's testing was likely to underestimate her actual level of intellectual/cognitive

9

functioning. *Id.* Dr. Schulz also opined that Plaintiff had minimal impairment in her ability to relate to others, including fellow workers and supervisors, was able to relate sufficiently to co-workers on simple, repetitive tasks, her ability to understand, remember, and follow instructions was moderately impaired by her borderline intellectual functioning, and that she was capable of comprehending and completing simple routine activities of daily living tasks both at home and in the community or in a job setting. *Id.* Dr. Schulz opined further that Plaintiff's ability to maintain attention and concentration and to perform simple, repetitive tasks with adequate persistence and pace was minimally impaired for tasks within the borderline range of intellectual/cognitive functioning and that her ability to withstand the stress and pressures associated with day-to-day work activity was mildly to moderately impaired. *Id.*

Plaintiff alleges in her Statement of Errors that the Commissioner erred in failing to find that she meet or equals Listing 12.05C. (Doc. 9).

A claimant has the burden of proving that his or her impairments meet or equal the Listings. *Bowen v. Yuckert,* 482 U.S. 319 (1987). In order to meet the requirements of a listed impairment, the claimant must meet all of the elements of the listed impairment. *See, Hale v. Secretary of Health and Human Services,* 816 F.2d 1078, 1083 (6th Cir. 1987), *citing, King v. Heckler,* 742 F.2d 968, 973 (6th Cir. 1984) (lack of evidence indicating the existence of all the requirements of Listing 1.05C provides substantial evidence to support the Secretary's finding that claimant did not meet the Listing). It is not sufficient to come close to meeting the requirements of a Listing. *Dorton v. Heckler,* 789 F.2d 363, 367 (6th Cir. 1989) (Secretary's decision affirmed where medical evidence almost establishes a disability under Listing 4.04(D)).

Listing 12.05 reads in part:

> *Mental Retardation and Autism:* Mental retardation refers to a significantly sub average general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period (before age 22)....
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> ...
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function;
> ...

20 C.F.R. Pt. 404, Subpt. P, App. 1 §12.05.

The regulations provide that a claimant will meet the listing for mental retardation only "[i]f [the claimant's] impairment satisfies the diagnostic description in the introductory paragraph *and* one of the four sets of criteria...." *Foster v. Halter,* 279 F.3d 348 (6th Cir. 2001) (citations omitted)(emphasis in original).

First, the Court notes that none of the mental health experts of record diagnosed Plaintiff with mental retardation. Indeed, as far back as age ten, Plaintiff was diagnosed as developmentally handicapped, but no school mental health resource person who had responsibility for evaluating Plaintiff diagnosed mental retardation. In addition, Plaintiff's treating psychiatrist, Dr. Smith and her mental health counselor identified Plaintiff's diagnoses as, *inter alia,* learning disorder, NOS. Further, examining psychologists Drs. Metts and Schulz diagnosed Plaintiff with borderline intellectual functioning. Finally, the reviewing mental health expert failed to diagnose Plaintiff as mentally retarded. (Tr. 367-83).

In addition, the record fails to demonstrate that Plaintiff exhibited deficits in adaptive functioning as required for a diagnosis of mental retardation. Plaintiff testified she was engaged and lived with her fiancé, infant son, and eight-year old daughter. (Tr. 503). Plaintiff further reported

11

that she was able to take care of her own hygiene needs, take care of her infant son throughout the day while her fiance was at work that she cooked, cleaned, shopped, washed dishes, did laundry, drive, visited with others, and went bowling. (Tr. 297, 409, 509-11). Finally, as noted above, Plaintiff has been able to maintain employment at unskilled jobs in the past. See, Tr. 516-19.

Under these facts, the Commissioner did not err by failing to find that Plaintiff satisfied Listing 12.05C.

Our duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

September 21, 2009.

                                               s/ Michael R. Merz
                                               United States Magistrate Judge

# NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).